## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| BRANDY L. GILLESPIE, in her personal capacity; as personal representative of the Estate of Jerry Lee Gillespie, Jr., deceased; as the Legal Guardian of A.G., A.G., and A.G., minor children; and as the Legal Guardian of G.G and M.G., incapacitated adults; and DICOTA GILLESPIE, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>UTAH DEPARTMENT OF CORRECTIONS; UTAH STATE PRISON; TONY WASHINGTON, an individual; and DOES I-X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:23-cv-221-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

This suit arises from the death of Jerry Lee Gillespie, Jr. after contracting COVID-19 while incarcerated at the Utah State Prison. The Plaintiffs, Mr. Gillespie's wife and children, brought this suit in state court, asserting both federal and state-law claims against the Defendants, the Utah Department of Corrections, the Utah State Prisons, Tony Washington, who was the clinical service bureau director of prison where Mr. Gillespie was incarcerated, and various unnamed individuals. *See* Dkt. No. 2-2. The case was removed to federal court based on this court's original jurisdiction over the federal claims and supplementary jurisdiction over the remaining claims. *See* 28 U.S.C. §§ 1331, 1367(a); Dkt. No. 2.

In addition to their state-law claims, the Plaintiffs assert a federal claim under Section 1983 against the "Individual Defendants," as well as a claim under the same statute against the Utah Department of Corrections and the Utah State Prison. In both federal claims, Plaintiffs

allege that the Defendants violated Mr. Gillespie's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments of the United States Constitution by failing to provide adequate medical care during the COVID-19 pandemic.

The Defendants move to dismiss all of Plaintiffs' claims for failure to state a claim upon which relief could be granted. The Defendants argue that the federal claims against the Department of Corrections, the Utah State Prison, and Director Washington in his official capacity must be dismissed because they are not "persons" subject to suit under Section 1983. The Defendants seek dismissal of the federal claim against Director Washington in his personal capacity based on qualified immunity.

For the reasons below, the Defendants' motion to dismiss the federal claims is granted. The case is remanded to state court for determination of the Plaintiffs' state claims.

## I.

For purposes of this motion, the court takes the Plaintiff's well-pleaded factual allegations as true and draws all justifiable inferences from the alleged facts in the Plaintiff's favor. *See Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiffs allege that before his incarceration, Mr. Gillespie had been diagnosed with multiple health conditions which placed him at increased risk from the COVID 19 pandemic. The Plaintiffs acknowledge that the prison took affirmative steps to control the spread of COVID-19. *See* Dkt. No. 24 ¶ 18 ("In October 2020, Mr. Gillespie informed Ms. Gillespie that the prison was conducing coronavirus (COVID-19) tests every few days on the inmates.") Nevertheless, because of Mr. Gillespie's specialized risk, Plaintiff Brandy Gillespie (Mr. Gillespie's wife) worked with her husband to request a compassionate release. *See id*. ¶¶ 15–17. This request was denied. *See id*. ¶ 17.

2

The Plaintiffs allege that sometime in October 2020, Mr. Gillespie told his wife that he was concerned that prison medical providers were not following safe testing procedures. *See id* ¶ 19. Mr. Gillespie was worried because inmates from different units were comingling, and medical providers were not changing their gloves between tests. *See id*.

On November 4, 2020, Mr. Gillespie told his wife that he felt very sick and that his requests for medical attention had been unanswered despite the passage of several "hours." *Id*. ¶¶ 20–21. Mr. Gillespie did not communicate with his wife again. *See id*. ¶ 22. A few days later, Ms. Gillespie contacted the prison for an update on her husband. *See id*. ¶¶ 23–24. Director Washington told her that despite her power of attorney for Mr. Gillespie, the prison could not share medical information because the release he had signed had lapsed. *See id*. ¶ 25. Director Washington later told her that Mr. Gillespie had been transferred to the infirmary and placed on oxygen but that he was doing well and did not have further medical needs. *See id*. ¶¶ 28–29.

On November 25, Ms. Gillespie was notified that Mr. Gillespie had died from COVID-19. *See id*. ¶ 33. Ms. Gillespie eventually learned her husband spent his last 17 days at St. Mark's Hospital in Salt Lake City. *See id*. ¶ 33.

Based on these factual allegations, the Plaintiffs allege that unidentified employees of the Department of Corrections or the Utah State Prison

> had a duty to provide timely medical treatment for conditions about which they knew or should have known. Defendants knew or should have known about Mr. Gillespie's medical needs, and with deliberate indifference to such medical needs, Defendant acted or failed to act in such a way to deprive Mr. Gillespie of necessary and adequate medical care, thus endangering his health and well-being. Such acts and/or omissions of Defendants violated rights secured to Mr. Gillespie under the 8th and/or 14th Amendment of the Unites States Constitution.
>
> . . . .
>
> The Conduct of Defendants alleged herein, including but not limited to (a) Failing to intervene when they knew that Jerry was a high-risk individual for contracting COVID and developing serious complications (b) denying Jerry Lee

Gillespie Jr adequate medical treatment, and (c) failing to address Jerry's concerns regarding COVID being spread by the prison through their testing protocols violated his rights under the Eighth and Fourteenth Amendments as well as the Utah State Constitution.

Each of the individual Defendants made intentional decisions with respect to the conditions of Jerry's confinement in the Draper Prison, including medical care, or lack thereof, which conditions put Jerry at substantial risk of suffering serious harm. Defendants did not take reasonable available measures to abate that risk, even though a reasonable official in similar circumstances would have recognized the high degree of risk involved. By not taking such measures, Defendants caused Jerry Lee Gillespie Jr's death. Among other things, and as described above, Defendants:

a. Were aware that Jerry Lee Gillespie Jr expressed consistent complaints about how he was feeling to the medical staff;

b. Were aware that Jerry was a high risk [sic] individual for contracting COVID and developing serious complications as a result;

c. Were aware that Jerry Lee Gillespie Jr needed further medical treatment, and that the de-minimis medications and treatment for COVID that they had given were not resolving Jerry's pain, sickness, and symptoms;

d. Were aware that Jerry needed immediate and emergency care once he contracted COVID; [and]

e. Were deliberately indifferent to Jerry's medical needs.

*Id.* ¶¶ 73, 76–77.

The Plaintiffs further allege that Director Washington

was the appointed Clinical Service Bureau Director of the Draper Prison facility at the time Jerry Lee Gillespie Jr was detained there. Defendant Washington was given the ability to appoint and prescribe the duties of assistants, instructors, specialists and other employees required for the operation of the medical treatment wing of the facility. He was therefore responsible for the supervision and training of the medical staff that provided medical treatment to Jerry Lee Gillespie Jr during his incarceration. He was aware or should have been aware of the policies, customs and practices alleged herein, and that said policies, customs or practices created a substantial risk of causing substantial harm to Draper Prison detainees. Despite this knowledge, Defendant Washington promulgated, allowed, approved of, and/or ratified said policies, customs or practices.

4

Defendant Washington failed to properly supervise his subordinates resulting in the abuse, neglect and damages alleged herein, including, but not limited to, Jerry Lee Gillespie's otherwise avoidable death.

Defendant Washington failed to adequately train facility personnel in the need for medical treatment for severely ill detainees; the need of ensuring prompt medical treatment for serious ill detainees; or to recognize emergency medical situations. Defendant Washington was aware that his failure to train created a substantial risk of harm to Draper Prison detainees.

As a direct and proximate result of the actions and/or inactions of Defendant Washington as a person responsible for supervision and training, Jerry Lee Gillespie Jr deprived of necessary, medications, medical evaluations, medical treatment, and as a result thereof suffered severe physical and emotional distress prior to his death.

*Id.* ¶¶ 78–81.

## II.

Dismissal is appropriate when the plaintiff has not pleaded facts, viewed in the light most favorable to the plaintiff, sufficient to show a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). The Supreme Court considers "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," to be "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554–55). "Facts, not conclusions, must be pleaded—'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court

reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2–3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678).

## III.

The Plaintiffs' Section 1983 claims against Director Washington in his official capacity and against the Utah Department of Corrections and the Utah State Prison must be dismissed because the statute does not provide for lawsuits against such defendants. Section 1983 provides for a remedy against a "person" who acts "under color of state-law" to deprive an individual of a federal right. 42 U.S.C. § 1983. But the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also id.* ( "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Howlett v. Rose*, 496 U.S. 356, 365 (1989) ("[T]he State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.").

The Plaintiffs argue that arms of the state may be held liable for Constitutional deprivations under *Monell v. Department of Soc. Serv.*, 436 U.S. 658 (1978). But *Monell* reflects the Supreme Court's conclusion that municipalities and other local governing bodies—unlike state entities—are "persons" withing the meaning of Section 1983. 436 U.S. at 690; *see also Will*, 491 U.S. at 64–66.

## IV.

6

The Defendants move to dismiss the Plaintiffs' Section 1983 claims against Director Washington in his individual capacity, and against other unnamed employees of the Department of Corrections on the ground that the Second Amended Complaint lacks adequate specificity to provide notice to the unnamed defendants and that Director Washington is protected by qualified immunity.

## A.

The court must evaluate the sufficiency of a plaintiff's allegations by painstakingly reviewing each claim against each defendant individually. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (holding that a plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, Section 1983 cases often include a list of defendants, such as

> the government agency and a number of government actors sued in their individual capacities. . . . [I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.

*Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

In *Eaves v. Kory,* the Tenth Circuit recently rejected an inmate's claims that a prison failed to provide adequate medical care during the COVID-19 pandemic. The Tenth Circuit

noted that "the bulk of his complaint alleges actions taken by groups of defendants without specifying each defendant's personal role in the alleged constitutional deprivation. 'Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.'" *Eaves v. Kory*, 2024 U.S. App. LEXIS 12964, *3–4 (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997)).

Similarly, the Plaintiffs' Second Amended Complaint fails to plead facts with sufficient specificity to provide the requisite notice to the unnamed defendants. The Plaintiffs allege that unidentified employees of the Utah Department of Corrections, and/or the Draper Prison knew that Mr. Gillespie's pre-existing medical conditions placed him at special risk of severe complications from COVID-19 but failed to take "reasonable available measures to abate that risk." Dkt. No. 24 ¶ 77.

The bulk of the Plaintiff's claim against the individual defendants, like the complaint in *Eaves*, alleges actions taken by groups of defendants without specifying each defendant's personal role in the alleged constitutional deprivation. *Id.* ¶¶ 6–8, 45–57, 63–69, 73–83, 101–15. For example, the Plaintiffs allege that

> Defendants had a duty to provide timely medical treatment for conditions about which they knew or should have known. Defendants knew or should have known about Mr. Gillespie's medical needs, and with deliberate indifference to such medical needs, Defendant [sic] acted or failed to act in such a way to deprive Mr. Gillespie of necessary and adequate medical care, thus endangering his health and well-being. Such acts and/or omissions of Defendants violated rights secured to Mr. Gillespie under the 8th and/or 14th Amendment of the Unites States Constitution.

*Id.* ¶ 73.

The Plaintiffs' Second Amended Complaint has notable similarities to *Brown v. Washington*, a COVID-19 case recently decided in the Sixth Circuit. No. 21-1729, 2024 U.S. App. LEXIS 2775 (6th Cir. Feb. 6, 2024) (unpublished). In *Brown*,

[the plaintiff] tested positive for COVID-19 in January 2021. He claimed that the prison "administration" housed prisoners who had tested positive in close contact with those who had tested negative. He stated that he "witnessed unrest, and fires" as a result of this practice. He further alleged that he "witnessed nurses not changing their gloves while testing" prisoners, that his requests that the commissary stock "certified" masks was denied, and that nurses told him and other prisoners that they were going to get COVID-19 "anyway" and that they "needed to obtain [herd] immunity." Brown claimed that he contracted the virus because he "was purposely exposed to" it: he was assigned the job of separating the laundry of prisoners who had tested positive for COVID-19 because he had yet to contract it, and he was housed with prisoners who had tested positive despite his request to be isolated from them. He alleged that he continues to suffer from headaches, breathing problems, and anxiety. He sought compensatory and punitive damages and injunctive relief.

*Id.* at *2. Much like Plaintiffs here, the plaintiff in *Brown* "discussed actions by 'nurses' and 'the administration,' and he alleged wrongdoing—refusing to buy certified masks and housing him with prisoners who had tested positive—without identifying the specific parties." *Id.*

The Sixth Circuit concluded that Mr. Brown failed to plead "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Id.* (cleaned up). Indeed, Mr. Brown offered "no facts to support a reasonable inference that any of the defendants individually took such an action, much less that he or she did so in deliberate indifference to his health or safety in violation of the Eighth Amendment." *Id.* at *6–7 (cleaned up). Similarly, the Plaintiffs' allegations against the unnamed defendants in this case fall short of the pleading standards required to provide adequate notice.

The Plaintiffs ask the court to overlook their pleading deficiencies, arguing that the Defendants' exclusive control of information and the lack of discovery prevent the Plaintiffs from making more specific allegations. But the Plaintiffs offer no authority in support of their argument that the pleading deficiencies may be overlooked at this stage in litigation, and the Supreme Court has made clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

The Tenth Circuit has held that the district court may dismiss without granting leave to amend when the plaintiff has repeatedly failed to cure defects. *See Harvey v. Thompson*, 746 Fed. App'x 722, 726 (10th Cir. 2018). The Plaintiffs have already amended their complaint twice, failing to cure the pleading defects each time. The court accordingly dismisses the Plaintiffs' Section 1983 claim against the unnamed employees of the Department of Corrections and the Utah State Prison because the Plaintiffs' allegations lack adequate specificity to provide notice to any of the unnamed defendants and to allow them to prepare a defense.

## B.

The only defendant in the Second Amended Complaint who is amenable to suit under Section 1983 is Director Washington in his individual capacity. The Plaintiffs allege that Mr. Gillespie's death was a result of Director Washington's failure adequately to train and supervise prison medical staff. The Defendants argue that Director Washington is protected by qualified immunity. Questions of qualified immunity should be resolved at the earliest feasible stage of litigation. *See Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

## 1.

"The doctrine of qualified immunity shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (quoting *Pearson*, 555 U. S. at 231). The doctrine shelters "all but the plainly incompetent or those who knowingly violate the law," *id.* (quotation marks and citations omitted), giving "'government officials breathing room to make reasonable but mistaken judgments,'" *Martinez v. Jenneiahn*, No. 22-1219, 2023 U.S. App. LEXIS 17609, at *4 (10th Cir. July 12, 2023) (unpublished) (quoting *City and County of San Francisco v. Sheehan*, 575

U.S. 600, 611 (2015)). Qualified immunity balances two interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

When a qualified immunity defense is raised, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236. Nevertheless, plaintiffs confronting qualified-immunity challenges do not face a heightened pleading requirement. *See Currier v. Doran*, 242 F.3d 905, 916–17 (10th Cir. 2001).

A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)) (cleaned up). Moreover, such right must be "generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction

as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colorado Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172–73 (D.C. Cir. 1983)).

As a "longstanding principle," the Supreme Court cautions lower courts not to define the constitutional right in question "'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *al-Kidd*, 563 U.S. at 742). Almost always, the clearly established law must be "particularized" to the case's facts. *Anderson*, 483 U.S. at 640. Without this requirement "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 639. Nevertheless, sometimes—at least in certain "extreme circumstances,"—"'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question,'" *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), though this is far from common.

A court must thus ask if an officer's actions were unlawful under clearly established law that obviously governed the circumstances the officer confronted. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). The law is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). That existing precedent must place the constitutional or statutory question in the context in which it arises in the case "beyond debate." *al-Kidd*, 563 U.S. at 741.

## 2.

A prison official is not liable under the Eighth Amendment if his mental culpability falls short of deliberate indifference. *See Shipps v. Groves*, 2023 U.S. App. LEXIS 10781 at *4 (10th

Cir. 2023) (citing *Estelle*, 429 U.S. at 105–06). To meet the "deliberate indifference" standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also id*. at 835.

The subjective prong of the test for deliberate indifference generally requires allegations (at the pleadings stage) that the defendant "acted or failed to act despite . . . knowledge of a substantial risk of serious harm." *Id.* at 842. It is not enough to establish that the official *should have* known of the risk of harm. *See id.* For as the Supreme Court has explained, "deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer,* 511 at 835. "It is obduracy and wantonness, not inadvertence or error in good faith . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Put another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. And "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* A plaintiff must thus allege a defendant's subjective "awareness" of this risk of harm. *Id.* at 848.

It follows that prison officials are not "deliberately indifferent" if they "did not know of the underlying facts indicating a sufficiently substantial danger and … were therefore unaware of a danger, or [if] they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* at 844.

### 3.

Finally, liability under Section 1983 cannot be predicated solely on the operation of the doctrine of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362 (1976); *Jenkins v. Wood*, 81 F.3d

988, 994 (10th Cir. 1996). Instead, to hold a supervisory defendant liable for actions of

subordinates, a plaintiff must allege "a deliberate, intentional act by the supervisor to violate

constitutional rights." *Id*. at 994–995 (quoting *Woodward v. City of Worland*, 977 F.2d 1392,

1399 (10th Cir. 1992)).

**4.**

The Plaintiffs fail to meet their burden to show that the Director Washington violated a

clearly established right by acting with deliberate indifference to a known risk of substantial

harm. As an initial matter, the Plaintiffs fail to identify any policies or training procedures that

Director Washington enacted. Further, the Plaintiffs fail to allege a specific deliberate and

intentional act by Director Washington that violated Mr. Gillespie's constitutional rights. These

deficiencies prevent the court from conducting a meaningful analysis of whether any policies

enacted violated clearly established rights, and whether Director Washington acted with the

requisite mental state.

The Plaintiffs' only support for the legal conclusion that Director Washington's policies

and training procedures were unconstitutional is the factual allegation that Mr. Gillespie received

inadequate medical care. *See* Dkt. No. 24 ¶ 77. The Plaintiffs allege that Director Washington

> failed to properly supervise his subordinates resulting in the abuse, neglect and
> damages alleged herein, including but not limited to Jerry Lee Gillespie's
> otherwise avoidable death.
>
> Defendant Washington failed to adequately train facility personnel in the need
> for medical treatment for severely ill detainees; the need of ensuring prompt
> medical treatment for serious[ly] ill detainees; or to recognize emergency medical
> situations. Defendant Washington was aware that his failure to train created a
> substantial risk of harm to Draper Prison detainees.

*Id.* ¶ 79–80. Although "couched as factual allegations," these conclusory assertions are not

entitled to the presumption of truth. *Renaud v. Ross*, 2023 U.S. Dist. LEXIS 19808, at *8

(quoting *Iqbal*, 556 U.S. at 678) ("Facts, not conclusions, must be pleaded—'the tenet that a

14

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'")

In the context of carceral training programs, the Tenth Circuit has held that

> [i]t is not enough, however, for [plaintiff] to show that there were general deficiencies in the county's training program for jailers. Rather, he must identify a specific deficiency in the county's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety.

*Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (citing *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). The Plaintiffs have cited no precedent involving an official whose medical policies or whose failure to train subordinates created unconstitutionally dangerous medical conditions for vulnerable inmates.

Despite this lack of precedent, the Plaintiffs cite *Taylor v. Riojas*, 592 U.S. 7 (2020), as recognizing a clearly established right that applies here. The circumstances at issue in *Taylor*, however, are readily distinguishable from this case. In *Taylor*, the Supreme Court concluded that prison officials must have been aware that the deplorable and inhumane conditions in which they placed an inmate were unconstitutional. The Supreme Court summarized the inmate's allegations:

> for six full days in September 2013, correctional officers confined him in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in "'massive amounts' of feces": all over the floor, the ceiling, the window, the walls, and even "'packed inside the water faucet.'" Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage.

*Id.* at 7–8 (internal citations omitted). The Supreme Court explained that

> [t]he Fifth Circuit identified no evidence that the conditions of Taylor's
> confinement were compelled by necessity or exigency. Nor does the summary-
> judgment record reveal any reason to suspect that the conditions of Taylor's
> confinement could not have been mitigated, either in degree or duration. And
> although an officer-by-officer analysis will be necessary on remand, the record
> suggests that at least some officers involved in Taylor's ordeal were deliberately
> indifferent to the conditions of his cells. *See*, *e.g.*, [*Taylor v. Stevens*, 946 F. 3d
> 211, 218 (5th Cir. 2019)] (one officer, upon placing Taylor in the first feces-
> covered cell, remarked to another that Taylor was "'going to have a long
> weekend'"); *ibid.*, and n. 9 (another officer, upon placing Taylor in the second
> cell, told Taylor he hoped Taylor would "'f***ing freeze'").

*Id.* at 9. The court concluded that when "[c]onfronted with the particularly egregious facts of this case, any reasonable officer should have realized that Taylor's conditions of confinement offended the Constitution." *Id*. But *Taylor* does not support the conclusion that any reasonable official would have understood that policies and procedures implemented by Director Washington in response to the COVID-19 pandemic were unconstitutional.

Further, recent cases involving the spread of COVID-19 in prisons undermine the Plaintiffs' position that they have plausibly alleged that Director Washington acted with deliberate indifference to a substantial risk of harm. As discussed, in *Brown v. Washington*, the Sixth Circuit affirmed the district court's dismissal for failure to state a claim upon which relief may be granted. in a case where the plaintiff "discussed actions by 'nurses' and 'the administration,' and he alleged wrongdoing—refusing to buy certified masks and housing him with prisoners who had tested positive—without identifying the specific parties," but failed to plead "facts that demonstrate what each defendant did to violate the asserted constitutional right." 2024 U.S. App. LEXIS 2775, at *5 (cleaned up). The Sixth Circuit concluded that the plaintiff offered "no facts to support a reasonable inference that any of the defendants individually took such an action, much less that he or she did so in deliberate indifference to his health or safety in violation of the Eighth Amendment." *Id.* at *6–7 (cleaned up). This decision strongly suggests that the conclusory allegations that the Plaintiffs offer here that Director

Washington knew or should have known the risks of his policies and procedures are insufficient
to state claim—especially given that "should have known" is insufficient to support a claim of
deliberate indifference. *See Farmer*, 511 U.S. at 837 ("an official's failure to alleviate a
significant risk that he should have perceived but did not, while no cause of commendation,
cannot under [Supreme Court] cases be condemned as the infliction of punishment.")

In another Sixth Circuit decision upholding a district court's dismissal for failure to state
a claim of deliberate indifference, an inmate-plaintiff who had tested negative for COVID was
not transferred to housing designated for inmates with negative test results, and then later tested
positive. *See Onumonu v. Washington*, No. 21-2812, 2022 U.S. App. LEXIS 17230, at *2 (6th
Cir. June 22, 2022) (unpublished). The failure to transfer the plaintiff to non-COVID housing
happened despite the plaintiff's "repeated inquiries about the transfer"; to the contrary, "a prison
official informed him that no order was made to transfer him to the gymnasium." *Id.* at *7–8.
Such allegations were deemed not to identify "the specific actions taken by the defendants that
could plausibly support the subjective component of an Eighth Amendment claim." *Id.* at *8.
Similarly, the Plaintiffs' nebulous and conclusory allegations cannot support a claim under
Section 1983 without identifying specific actions taken by Director Washington in violation of
Mr. Gillespie's constitutional rights.

The Tenth Circuit too has affirmed the dismissal of claims arising from the COVID-19
pandemic where the plaintiff failed adequately to allege deliberate indifference. *See Blake v.
Zmuda*, No. 21-3236, 2022 U.S. App. LEXIS 10772 (10th Cir. Apr. 21, 2022) (unpublished).
There, inmate-plaintiff, Mr. Blake, "asserted that prison staff violated the mask-wearing policy"
and that "after having tested negative for COVID-19, he was placed in a quarantine cell that was
improperly sanitized after an inmate with COVID-19 had occupied the cell" and that "he tested

positive for COVID-19 soon after." *Id.* at *1. The district court dismissed the case for failure to

state a claim, concluding that "Mr. Blake's allegations suggest, at most, negligence and do not

rise to the level of deliberate indifference." *Id.* at *2 (cleaned up). Affirming the district court,

the Tenth Circuit explained that

> Mr. Blake has not alleged sufficient facts tending to show that Defendants knew
> the segregation cell was not sanitized, a substantial risk of serious harm existed by
> placing him in that unsanitized cell, and Defendants deliberately disregarded that
> risk. Although Mr. Blake has alleged that he filed various grievances regarding
> prison staff violations of COVID-19 policies, even an official's failure to act on a
> risk he should have perceived is not enough to establish deliberate indifference.
> At most, Mr. Blake's allegations amount to a claim of negligence.

*Id.* at *4.

And in *Eaves v. Kory*, the Tenth Circuit likewise affirmed dismissal of a prisoner's

Section 1983 claims based on exposure to COVID-19. The plaintiff alleged that he was "forcibly

relocated to a housing unit where inmates were actively testing positive for COVID-19 and that

he contracted the disease as a result. He further alleged that he received deficient medical care

and that officials ignored his formal grievances." *Eaves v. Kory*, 2024 U.S. App. LEXIS 12964,

at *2 (10th Cir. May 30, 2024). But the Tenth Circuit noted that the plaintiff had failed "to allege

why [the official's] actions were unreasonable given the circumstances—let alone whether they

had any authority to correct the alleged constitutional deprivation in the first place." *Id.* at *4.

Here also, the Plaintiffs' allegations lack sufficient detail to support the conclusion that

Director Washington's adopted any policies that manifested deliberate indifference under the

circumstances, especially given the evolving policy and medical landscape of the COVID-19

pandemic. While the Plaintiffs are correct that in particularly obvious cases, no legal precedent is

required to render a constitutional violation "clearly established," the Plaintiffs' case does not

present such a situation. At most, the Plaintiffs' allegations support a claim of negligence, which

falls below the standard of deliberate indifference necessary to support their claim.

The Plaintiffs have not alleged sufficient facts to support the conclusion that Director Washington adopted policies and procedures that resulted in Mr. Gillespie's death that he knew were so unreasonable in the context of the rapidly unfolding COVID-19 pandemic that they violated constitutional protections against cruel and unusual punishment. Two allegations necessary to state a claim are missing here: (a) the affirmative link of Director Washington's personal involvement in, or responsibility for the alleged acts and omissions that Plaintiffs' allege caused Mr. Gillespie's death; and (b) any facts that could support a reasonable inference that Director Washington was subjectively aware of danger Mr. Gillespie faced from the Prison's actions and omissions. Plaintiffs have thus failed plausibly to allege that Director Washington acted with deliberate indifference to Mr. Gillespie's constitutional rights.

*    *    *

For the foregoing reasons, the Defendants' motion to dismiss is granted with respect to the Plaintiffs' federal claims against all the Defendants. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims." *Reyes v. N.A.R. Inc.*, 546 F.Supp.3d 1031, 1045 (D. Utah 2021) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998)). The court will follow this guidance here. The Plaintiffs' state-law claims are remanded to the state court.

**IT IS SO ORDERED.**

Dated this 31st day of March, 2025.
BY THE COURT:

Howard C. Nielson, Jr.
United States District Judge